**SO ORDERED.**

**SIGNED January 10, 2007.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **IN RE: LORRAINE STALIANS** | **CASE NO. 04-81643** |

**CONCORDIA BANK & TRUST COMPANY**

**VERSUS**

| | |
|---|---|
| **LORRAINE STALIANS** | **ADVERSARY NO. 05-8057** |

**AND**

**CITY OF VIDALIA**

**VERSUS**

| | |
|---|---|
| **LORRAINE STALIANS** | **ADVERSARY NO. 05-8058** |

**REASONS FOR JUDGMENT**

These adversary proceedings came before the Court on the plaintiffs' Motions for Summary Judgment. The Complaints in each adversary proceeding seek the denial of the debtor's discharge under 11 U.S.C. §727(a)(2)-(6) and Concordia Bank & Trust ("Concordia Bank") additionally asserts a complaint for the non-dischargeability of a debt under 11 U.S.C. §§523(a)(2)(A), (a)(4) and (a)(6).

These are Core Proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (J). This Court has jurisdiction pursuant to 28 U.S.C. §1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. No party has sought to withdraw the reference, nor has the District Court done so on its own motion. This Court makes the following Findings of Fact and Conclusions of Law in accordance with F.R.B.P. 7052. Pursuant to these reasons, the plaintiffs' Motions for Summary Judgment are **GRANTED as to the Denial of the Debtor's discharge under §727(a)(3),(5) and (6) and Concordia Bank's Motion for Summary Judgment is Dismissed in part, on the grounds alleged under §523, as Moot.**

### Factual Summary

The related bankruptcy case was filed under Chapter 11 on August 24, 2004, as an individual case "Loraine Dee Stalians d/b/a KMAM, LLC." According to the petition, the case was filed on behalf of both an individual debtor and a business debtor, making the small business election under §1121(e), whose principal business asset was a restaurant "Lorraine's on the Riverwalk," located at 102 Front Street in Vidalia, Louisiana. There is also a business of the debtor shown as a restaurant named "Lorraine's Marketing, Inc.," located at 1600 Carter Street, Vidalia, Louisiana.

An Order to the Debtor in Possession was entered on August 31, 2004, requiring the debtor to close and preserve its present books and accounts and maintain new books of account showing all income, expenditures, receipts and disbursements as Debtor-in-Possession, and further prohibiting the use of cash collateral, if such was the subject of any security interest and to require the deposit of same in a separate account. The sale, lease or disposition of any property not in the ordinary course of business was prohibited. The purchase of merchandise, supplies and other property was permitted only in the ordinary course of business. The Order required the debtor to file monthly operating reports

2

monthly with the court and to furnish a copy to the United States Trustee.

The debtor-in-possession filed a Motion to Sell Ms. Stalians home for $310,000.00 on September 16, 2004, and noticed for a hearing on October 20, 2004. But with no schedules or operating reports filed by the debtor-in-possession, on October 7, 2004, Concordia Bank filed an opposition to the Motion to Sell and its own Motion to Prohibit the Use of Cash Collateral by the debtor-in-possession and a Motion for Adequate Protection.[1]

---

[1] Concordia Bank asserted its interest in the following:
Collateral Pledge Agreement & $644,000.00 Leasehold Mortgage dated 4/16/02 cover 0.381 acres (16587.10sq. ft) described more particularly described as follows:

TRACT 5:0.381 Acres (16,587.10 sq. ft) Portion of Old Town of Vidalia between the Levee and the Mississippi River situated in the City of Vidalia, Section 11, T7N-R10E, Concordia Parish, Louisiana as follows: From the most westerly corner of Block 96 of the City of Vidalia, as shown by map recorded in Conveyance Book NN on page 275 of the records of Concordia Parish, Louisiana, go S 75° 32' 50" E for 1,775.87 feet to the point of beginning, being the most westerly corner of within described tract. Thence from said point of beginning go N 41° 46' 18" E for 140.76 feet; thence S 37° 57'21"E for 132.15 feet; thence S 51° 54' 59" W for 138.51 feet; thence N 37° 57' 13" W for 107.36 feet to the point of beginning. Within described tract contains 0.381 acres (16,587.10 Sq. Ft.), being portion of the Vidalia Riverfront Development, situated in the City of Vidalia, Section 11, T7N-R10E, Concordia Parish, Louisiana. The above described property is subject to a Leasehold Mortgage with the Town of Vidalia and Vidalia Riverfront Development District. Assignment of Life insurance policy issued by Shelter Life Insurance Company in the amount of $400,00.00showing Concordia Bank and Trust Company as beneficiary.

Collateral Pledge Agreement dated 4/16/02 from Lorriane Stalians $99,000.00 2nd Mortgage dated 1/23/01 Lakeview Estates, Concordia Parish, Louisiana covering one house and Lot No. 53 and the easterly one-half(½) of Lot No. 52 of Lakeview Estates, situated in Sections 36, 37, and 38, TN-R9E, Concordia Parish, Louisiana, together with all buildings and improvements thereon. Assignment of Putnam Investments Accounts dated 4/10/02 as follows: Putnam Account No. A881581584687BBBA Putnam Account No. A021581584687BBBQ Putham Account No. A051581584687BBBW Putnam Account No. A531581584687BBBX Putnam Account No. A0L1581584687BBBV. All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in debtor's business.

All equipment, including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts. UCC-1 dated 2/25/93 covering one (1) 1989

3

The schedules were filed on October 15, 2004 reflecting the debtor-in-possession earning unemployment benefits in the amount of $1,000.00 per month and $10 per month as the only sources of income. Both personal consumer and business debts are listed. An interest in real property valued at $350,000.00 and an interest in "Lorraine Marketing Inc., KMAM, LLC (McDonalds)" valued at $250,000.00 is listed as exempt. The schedules also reflect assets styled "kitchen equipment, dining room furniture" worth $57,000.00, located at the Front Street property. Concordia Bank is listed as the largest secured creditor, having filed a proof of claim in the amount of $794,552.73. (Exhibit A.) The City of Vidalia, who provided post-petition utility services to the debtor-in-possession, holds an administrative expense priority claim in the amount of $7,495.10. (Order, Case Doc. #112.)

The §341 Meeting was held on October 20, 2004. As of the date of filing the schedules, debtor-in-possession shows the employment of two accountants, Jeri Sue Tosspon of Ferriday, Louisiana and Richard Sparkmon of Conyers, Georgia.

A hearing was held on October 27, 2004, at which time the Motion to Sell the home was granted with certain stipulations, and counsel for Concordia Bank & Trust was directed to prepare the Order. At that time, the Motion to Prohibit the Use of Cash Collateral was also granted in the interim, with a final hearing to take place on November 10, 2004. An Agreed Order of Adequate Protection and as to the Interim Use of Cash Collateral was entered on November 10, 2004, with a final hearing on the

---

Mercedes Benz with S/N WDBCA45E8KA482153.UCC-1 dated 6/3/03 including: All furniture, fixtures, equipment and inventory owned by Lorraine's on the Riverwalk and located in/at Lorraine's on the Riverwalk located at 102 Front Street, Vidalia, Louisiana, whether now owned or late acquired, together with all of debtor's accounts receivables arising out of debtor's operation of Lorraine's on the Riverwalk; Guaranty of Fred Stalians dated June 3, 2003 guaranteeing payment up to the principal amount of $50,000.00 plus accrued interest, attorney's fees and collections costs permitted by law. all as will more full y appear by reference to the Universal Note and Security Agreement signed on June 3, 2003 by Lorraine D. Stalians, granting Concordia Bank and Trust Co. a security interest in said collateral.

latter postponed to November 24, 2004. An order was entered at that hearing, requiring debtor to file Monthly Operating Reports; amend the petition to delete the reference to "L.L.C." and, if needed, to file a separate petition; and to amend the applications to employ the C.P.A., Ms. Tosspon, to include a F.R.B.P. 2014 affidavit and submit an Order on same. The Order also postponed the final hearing to December 8, 2004, (with the direction that counsel to the debtor must be present) and the Interim Order on the Use of Cash Collateral continued in effect pending the final hearing. Although "L.L.C." would be deleted from that point on, the debtor-in-possession went further by filing a Motion to Dismiss KMAM, LLC as a party to the bankruptcy case on December 6, 2004. On December 8, 2004, the Motion to Prohibit the Use of Cash Collateral was granted, and although the Court directed counsel for Concordia Bank & Trust to prepare the Order and allowed counsel for the debtor-in-possession an opportunity to review it and sign-off, no order was ever submitted on that ruling.

By the new year of 2005, the debtor-in-possession having failed to file any monthly operating reports, the United States Trustee and Concordia Bank & Trust began pursuing their separate Motions to Dismiss or Convert, and Concordia Bank filed its own Motion to Lift the Stay, all of which were set for hearing on January 26, 2005. The City of Vidalia also appeared in January, seeking Adequate Protection and a Post-Petition Utility Deposit. On January 26, 2005, the case converted to one under Chapter 7; KMAM, LLC was dismissed as a party; Concordia Bank's Motion to Lift was granted and made effective in the converted case; and the City's Motion for Adequate Protection was withdrawn as moot. The conversion Order required debtor to turn over all records and property of the estate to the Chapter 7 Trustee and to file any amended schedules, if needed, and serve same on the United States Trustee. The amended schedules were to include any unpaid debts incurred after the commencement of the case but before the conversion, with the names and address of each creditor, file any past due

5

monthly operating reports with a final report and account, and file a schedule of any executory contracts or unexpired leases entered into or assumed in the same interval. Debtor was directed to attend the §341 Meeting as scheduled by the United States Trustee. The only pleading filed by the debtor was a Statement of Intentions.

The §341 Meeting in the Chapter 7 case was scheduled for March 15, 2005, however, the debtor failed to appear, so it was continued to and held on March 29, 2005. In July 2005, Concordia Bank and the City of Vidalia filed Motions to Compel the F.R.B.P. 2004 Examination of the debtor, wherein it was alleged and not disputed by debtor's counsel, "Debtor has refused to amicably and voluntarily submit to a 2004 Examination. Counsel for Debtor has informed counsel for Mover that Debtor has moved out of state and will not return voluntarily for the examination." After those motions were granted in Court on August 24, 2005, that examination was upset by the debtor's Motion for a Continuance of the Examination scheduled for September 28, 2005 and reset for November 30, 2005 at 9:30 a.m. in Alexandria, Louisiana. Again on November 21, 2005, counsel for the debtor moved for another continuance of the examination, this time, without date. It is by this Motion of the debtor that she first informs the Court that she has moved to Las Vegas, Nevada, and that her distance prevents her participation to the extent that her presence is required. Although the Court normally does not continue a matter without date, the Motion was granted and the debtor was warned that the Court would not entertain any other requests for continuance of this matter. On November 28, 2005, an Order to Appear at a scheduling conference to be held on December 14, 2005 to re-fix the date of the debtor's much anticipated appearance in Court and at the examination was issued.[2]

---

[2]The text of that Order provides: An order was submitted by the debtor seeking to continue the hearing on Motion To Compel appearance previously scheduled for November 30, 2005, but

With less trepidation than nerve, two days prior to the date of the scheduling conference, counsel to the debtor filed a Motion to Continue the December 14th setting to a date to follow the pre-trial conferences in the above-captioned adversary proceedings with which the Motion to Compel would be consolidated, February 8, 2006. On that date, February 8, 2006, the debtor appeared and gave testimony at the F.R.B.P. 2004 examination, six months after the Court granted the Motion to Compel. (Doc. # 23, Exhibit I..)

After a number of extensions of the time to file Complaints to the discharge, the plaintiffs filed their complaints and the instant Motions for Summary Judgement were filed on July 14, 2006. They were originally noticed for hearing on August 9, 2006, but were continued three times (once by counsel to the plaintiffs) to new dates, and finally heard on December 13, 2006. Concordia Bank seeks a determination that the debt due it be deemed non-dischargeable under §523(a), §§(2)(A), (4) and (6). It also seeks that debtor's discharge be denied under 11 U.S.C. §727(a)(2), (3), (4), (5) and (6). The allegations of the complaint focus on the debtor's failure to report and disclose information as required by the various orders of the Court, disposing of its cash collateral without its consent, concealing financial records, and failing to file monthly operating reports and maintain adequate financial records, from which her financial condition or business transactions might be ascertained, unless such act or

---

neither the Motion nor the Order specified a date for the continued hearing, and was signed with the provision that there would be no further continuances of this hearing. In support of the Motion to Continue, debtor cites her relocation to Las Vegas, Nevada, but the Court herein reminds the debtor that by virtue of filing her case in this district and division, she has subjected herself to the jurisdiction of this Court, and it is obvious by the Motion to Compel that her creditors are seeking her cooperation in the progress and resolution of this case. Because it is not the practice of this Court to continue any hearing without date, the Court will *sua sponte* fix the continued hearing date to December 14, 2005 at 9:30 A.M., at which the debtor is required to be present, and failure of the debtor to appear will result in the Court either issuing its own Order to Show Cause in this matter or allowing the Movant-creditor time to file such a Motion of its own.

7

failure to act was justified under the circumstances.

The complaint of the City of Vidalia asserts that it holds an administrative expense priority claim and that the debtor failed to file Monthly Operating Reports and account for receivables and inventory, or provide any accounting for creditors or the trustee to determine whether assets were transferred, diminished, or lost. These acts, it alleges, entitle it to a determination that the discharge should be denied under 11 U.S.C. §727(a)(3) and (4).

**Applicable Law and Analysis**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate only if the movant demonstrates that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. F.R.C.P. 56(c); *H.R. Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 4/8/2003). If the moving party meets its burden, the non-movant must designate specific facts showing there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(en banc).

Uniform Local Rule 56.1 requires that a separate, short and concise statement of material facts as to which the moving party contends there is no genuine issue of fact to be tried accompany the Motion for Summary Judgement. Plaintiffs filed such a statement in compliance with that rule on July 14, 2006. (Doc. no. 25 in both Adversary Proceedings 05-8057 and 05-8058.) Uniform Local Rule 56.2, likewise, requires a separate, short and concise statement of those material facts which do present a genuine issue to be tried accompany any Opposition to the Motion for Summary Judgment. No such

8

separate statement was filed by the defendant. The rule further provides: "All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Therefore, having failed to controvert under Rule 56.2, the following pertinent facts as set forth in the plaintiffs' Statement of Uncontested Material Facts are deemed admitted:

> 9. No Adequate Protection Payments were made to Concordia Bank in accordance with the Adequate Protection Order.
> 10. No financial records or financial accountings were provided to Concordia Bank or its counsel during the pendency of the case.
> 11. A proposed Monthly Operating Report for the time period of August 25, 2004 through September 30, 2004 with attached bank records and canceled checks was provided to counsel for Concordia Bank on November 8, 2004.
> 12. No Monthly Operating Reports were filed in the record by Debtor in Possession.
> 13. No financial records or Monthly Operating Reports were provided to Concordia Bank & Trust Company with the exception of the report for the time period of August 25, 2004 through September 30, 2004.
> 14. Debtor continued to operate her restaurant until doors were closed and freezers emptied on December 6, 2004.
> 15. No accounts receivable or other assets were turned over to Concordia Bank voluntarily by debtor.
> 16. Concordia Bank obtained relief from the stay and proceeded with foreclosure on the restaurant and the furniture and fixtures remaining in the restaurant. No cash collateral was recovered.

11 U.S.C. §727(a)(2)-(6) provides: "The court shall grant the debtor a discharge, unless—"

**(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

9

    **(A)** property of the debtor, within one year before the date of the filing of the petition; or

    **(B)** property of the estate, after the date of the filing of the petition;

**(3)** the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

**(4)** the debtor knowingly and fraudulently, in or in connection with the case--

    **(A)** made a false oath or account;

    **(B)** presented or used a false claim;

    **(C)** gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

    **(D)** withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

**(5)** the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

**(6)** the debtor has refused, in the case--

    **(A)** to obey any lawful order of the court, other than an order to respond to a material question or to testify;

    **(B)** on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

    **(C)** on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify.

Section 727 "makes complete financial disclosure a 'condition precedent' to the privilege of discharge." *United States v. Ellis,* 50 F.3d 419, 424 (7th Cir.1995). *See also Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3rd Cir.1992)(debtor's disclosure of financial condition is a prerequisite to obtaining a discharge); *In re Sigust,* 255 B.R. 822, 827 (Bankr.W.D.La.2000), (purpose of §§ 727(a)(3) is to test the completeness of the disclosure requirements to a discharge.) (quotations omitted), *aff'd sub nom, Sigust*

*v. McDonough,* 281 F.3d 1280 (5th Cir.2001) (Table, No. 01- 30583); *Matter of Hughes,* 184 B.R. 902, 908 (Bankr.E.D.La.1995) ("disclosure of the debtor's financial condition is a prerequisite to obtaining a discharge"). The law does not require an impeccable system of bookkeeping. *Median Bank,* 958 F.2d at 1230. However, at the very least a debtor has a duty to disclose all of the records available to her. The records must not only be kept, but maintained in an organized fashion. "[N]either the court nor a creditor is required to reconstruct a debtor's financial situation by sifting through a morass of checks and bank statements." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002).

The sufficiency of a debtor's records is determined on a case-by-case basis. *In re Bailey*, 145 B.R. 919, 924 (Bank.N.D. Ill. 1992). The plaintiff is charged with establishing the inadequacy of the records, and, once that showing is made, the burden shifts to the debtor to prove that the failure to keep the records was justified under the circumstances, including what a reasonable person would do under the circumstances. The inquiry as to the adequacy of the records should address the background of the debtor, the nature, complexity and volume of the business, with the completeness and accuracy thereof weighed against the size and complexity of the debtor's business (including the amount of credit extended to the debtor) and any other circumstance that should be considered in the interest of justice. *In re Hobbs*, 333 B.R. 751 (Bankr.N.D.Tex. 2005). A failure to satisfactorily explain the lack of records will result in the denial of the discharge. *In re Pulos*, 168 B.R. 682, 690 (Bankr.D.Minn. 1994). Although §§(a)(2) and (4) require some level of knowing or intentional acts/omissions of the debtor, intent to defraud is not an element in a determination of denial of a discharge under §727(a)(3) for the failure to keep adequate financial records. While the defendant denies the failure to maintain business records was intentional and that there was no intent to conceal business information, the Court notes that §727(a)(3) contains the disjunctive "or failed to keep or preserve any recorded information,

11

including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

The complaints of these plaintiffs through the motions for summary judgement and statements of facts focus upon the relief sought under §727(a)(2)-(6) and distill to the contention that the debtor failed to keep or produce adequate financial records, made false oaths or accounts, withheld recorded information, failed to explain satisfactorily the loss of assets or deficiency of assets to meet her liabilities, and failed to comply with orders of the Court.

Debtor's long anticipated and much delayed 2004 examination took place on February 8, 2006. At that time, debtor stated she relocated to Las Vegas, Nevada, five months after the sale of her home in Vidalia, Louisiana. At the time of the examination, she was training for a banking position and had briefly worked for a used car dealer for two weeks. Ms. Stalians stated she complied with the requirements of the Order to the Debtor-in-Possession for August and September, 2004, during which time she was attempting to reorganize the restaurant businesses. Another business, a McDonald's franchise operation, burned to the ground in July, 2004. That incident resulted in an extensive investigation as to the cause of the fire and the insurance company refused to pay.

Debtor testified she continued to operate the restaurant from the date of filing in August, 2004, until November, a period of approximately three months. (Doc. #23, Exhibit I, p.29.) During that period, without any court authorization, she received loans from various family members, in addition to a loan from a family member to file the bankruptcy. As noted, no amended schedules other than the statement required under §521 were filed post-conversion to list these creditors. Further, debtor drew unemployment "from McDonald's" from July to December, 2004, which income was not reported, with

12

the loans from family members and unemployment being routed through either KMAM, LLC, or Lorraine Marketing, Inc., but were used to keep the business operating. These loans were unreported, with the exception of the loan from her father, which is listed in the Statement of Affairs. The funds should not only have been listed in the monthly operating reports, but even after conversion, the family members were not even listed as creditors.

The only documents produced by the debtor at the Rule 2004 examination, in addition to the two operating reports that were never filed, were register reports, some bank statements, and incomplete computer generated sales reports and gratuity reports for various periods in the Fall of 2004, from which she opines that the sales could be reconstructed. (Doc. #23, Exhibit I, p.21) As noted above, Courts and creditors are not required to reconstruct debtor's business affairs from such incomplete and disorganized documentation. *Union Planters*, 283 F.3d at 899. Further, the belated production of disorganized records at the February, 2006, examination can scarcely be said to comply with the requirements of the various court orders and §727(a)(3).

The Court's Order to the Debtor-In-Possession on August 31, 2004 contained explicit instructions concerning records maintenance. (Case, Doc. # 9.) Paragraph 3 of that Order states that the debtor-in-possession shall "close and preserve its present books and accounts and open and maintain new books of accounts showing all income, expenditures, receipts and disbursements." Paragraph 8 of that Order requires the filing of monthly operating reports and the compilation of financial statements, including balance sheets, profit and loss statements, a statement of the accounting method used, cash receipts and a narrative report of the efforts made by the debtor-in-possession to rehabilitate the business. It seems the debtor attempted to prepare one monthly operating report, but that document was never filed. The case record, combined with the above-listed facts deemed admitted, reflect that

this debtor failed every obligation to keep and provide business records and file required monthly operating reports. Finally, that Order also provides in Paragraph 9 that the debtor-in-possession shall "take all reasonable steps necessary to prevent the incurring of administrative or priority expenses" and "take all steps necessary to prevent any depletion or potential depletion of said assets and shall further advise this court promptly if the continued operation of the debtor may not be in the best interest of the creditors or the debtor."

Here, although debtor's educational level is not reflected in the deposition, the nature and complexity of her businesses is clear. She operated two restaurants and a McDonald's franchise operation. At the time of her deposition, she was training for a position in a bank. She had induced Concordia to extend her credit of over $750,000.00. These factors militate in favor of not only the need but the ability to maintain adequate business records.

The foregoing basis for denial of the discharge could be mitigated by a reasonable explanation, and yet, after she finally testified in her Rule 2004 examination, a *reasonable* explanation was not forthcoming. The debtor's explanation of her failure to act distills to the contention that the cumulative effect of depression triggered by the fire, foreclosure threats, and failed businesses simply caused her to reach a point where it was hard to get out of bed. In her words, "There was just no hope, and I lost it." (Doc. #23, Exhibit I, p.14.) In *Hobbs*, the debtor sought to explain her failure to keep records by the facts that she had been diagnosed with breast cancer, was divorcing her spouse, and had lost her business at the time of filing the bankruptcy. The court held that even those tragic events did not excuse the debtor and thus she had not met her burden. *In re Hobbs*, 333 B.R. 751 (Bankr.N.D.Tex. 2005). The same result must obtain here. Further, the attempts to excuse her inactions based on her assertion that Concordia Bank never requested the documentation required by the various orders, and

14

finally, claiming ignorance of the orders, are sorely lacking. (Doc. #23, Exhibit I, p.20.)

Moreover, it appears the debtor was not completely accurate in the schedules and statements initially filed. Despite the fact that debtor asserts in the original schedules that two accountants, Jeri Sue Tosspon of Ferriday, Louisiana and Richard Sparkmon of Conyers, Georgia, were employed by the debtor-in-possession and had knowledge of and/or kept business records, she later testifies in the Rule 2004 examination that she had not ever hired a CPA. (Doc. #23, Exhibit I, p.23.) Counsel to the debtor clarifies in that examination that they "talked to Jeri Sue Tosspon," but that Ms. Tosspon "refused to take it on" because the debtor could not pay her. (Doc. #23, Exhibit I, p.23.)

This debtor showed a flagrant disregard of her obligations listed in the Order to the Debtor-In-Possession, and in particular, Paragraph 9 of that Order, as evidenced by the repeated failure to cooperate with scheduled examinations and court appearances, requiring numerous continuances and excessive litigation by counsel to both sides in these adversary proceedings. The debtor then failed to comply with the accounting provisions of a host of orders regarding the use of cash collateral emanating from the hearings in the case, and later further compounded the disregard to the Court and her creditors by moving halfway across the country to restart her life before fulfilling her legal obligations in the bankruptcy case.

This Court finds that summary judgment is warranted on the basis of §§(a)(3) for her failure keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; §§(a)(5) for the failure to adequately explain the loss of revenue incurred from continued operation of the business through April 2005; and (6) for the flagrant disregard of her obligations imposed by the bankruptcy code and this

15

Court's Order dated August 31, 2004 (Doc. no. 9), the Adequate Protection Order (Doc. no. 34), and the Order dated November 24, 2004 regarding the filing of monthly operating reports (Doc. no. 42).

## CONCLUSION

In accordance with the foregoing, the plaintiffs' Motions for Summary Judgment are GRANTED as to the Denial of the Debtor's discharge under §727(a)(3),(5) and (6) and Concordia Bank's Motion for Summary Judgment is Dismissed in part on the grounds alleged under §523 as Moot. A separate and conforming Order will enter this date.

# # #